NUMBER 13-05-463-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


STS GAS SERVICES, INC., Appellant,


v.
 


SID K. SETH a/k/a SIFCO, LLC

a/k/a SHIVA INVESTMENT FIRST, LLC, Appellee.

 




On appeal from the 240th District Court of Fort Bend County, Texas.


 




MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza


 

 Appellee, Sid K. Seth a/k/a SIFCO, L.L.C. a/k/a Shiva Investment First, L.L.C.
("SIFCO"), sued appellant, STS Gas Services ("STS"), for a declaratory judgment that the
parties' lease agreement ("lease") was renewed and extended for an additional five-year
term, in accordance with the renewal provision of the lease. STS filed a counterclaim
seeking a declaratory judgment pertaining to the renewal of the lease and to recover
damages for an alleged breach of the lease with regard to amounts due for dumpster
services on the leased property and for past due rent. From judgments by the trial court
granting both of SIFCO's motions for summary judgment, STS has perfected its appeal to
this Court. On appeal, STS raises ten issues, which, for purposes of organization, will be
reordered, addressed as five, and referred to numerically as follows: (1) by granting
SIFCO's motion for summary judgment pertaining to SIFCO's declaratory judgment action,
the trial court erred in holding that the lease had been renewed; (1) (2) the trial court erred in
granting SIFCO's motion for summary judgment pertaining to STS's counterclaims; (2) (3) the
trial court erred in awarding SIFCO "attorney's fees in the March 23, 2005 Summary
Judgment"; (3) (4) the trial court erred in denying STS's motion for a new trial; (4) and (5) the trial
court erred in granting SIFCO's motion to substitute parties. (5) We affirm the judgment of the
trial court. 

I. Factual & Procedural Background

 On February 10, 1999, SIFCO entered into a lease with Jabe Energy Co. ("Jabe"). (6) 
SIFCO was leasing the property to run a Taco Bell outlet located in Sugarland, Texas. The
lease was for a primary term of five years commencing on April 1, 1999, "subject to
Landlord's substantial completion of certain build out work described below . . . ." The lease
further provided that "[a]ctual rental charge shall not start until Landlord has substantially
completed build out construction." (7) The parties do not dispute that the build out
construction was completed on September 1, 1999, and that SIFCO made its first rent
payment and began occupying the premises also on September 1, 1999. However, STS
contends that the lease term commenced on April 1, 1999. Therefore, on March 31, 2004,
STS demanded possession of the property from SIFCO, alleging that SIFCO was a
holdover tenant. (8)

 On October 7, 2004, SIFCO filed its original petition and application for injunctive
relief, identifying itself as Shiva Investment First, L.L.C., against STS whereby SIFCO
sought a declaratory judgment that the lease had been renewed on either January 30, 2004
or May 26, 2004, and an injunction to prohibit the commencement of eviction proceedings. 
On October 19, 2004, after a hearing on SIFCO's application for injunctive relief, the trial
court granted SIFCO a temporary injunction to prohibit the commencement of eviction
proceedings and required SIFCO to post a bond in the amount of $30,000 with which
SIFCO complied. 

 Also on October 19, 2004, STS filed a motion for summary judgment pertaining to
SIFCO's declaratory judgment action. Subsequently, on November 11, 2004, SIFCO filed
a response to STS's motion accompanied by a cross-motion for summary judgment. On
November 24, 2004, the trial court granted SIFCO's cross-motion for summary judgment
holding that the lease was valid and enforceable and that SIFCO had effectively renewed
the lease for an additional five-year term ("November 24, 2004 order") beginning on
September 1, 2004. The trial court denied STS's motion for summary judgment on
December 10, 2004. 

 Also on November 24, 2004, prior to the trial court's granting of SIFCO's cross-motion for summary judgment, STS filed a counterclaim against SIFCO for a declaratory
judgment that the lease had not been renewed and for breach of the lease associated with
amounts owed for dumpster services and past due rent. In response, on March 1, 2005,
SIFCO filed a second motion for summary judgment, this time pertaining to STS's
counterclaims. On March 23, 2005, the trial court granted SIFCO's motion for summary
judgment and awarded attorney's fees in the amount of $14,348.00 and expenses in the
amount of $22.85 ("March 23, 2005 order"). In addition, the trial court, in its March 23, 2005
order, awarded SIFCO an additional $5,000 in attorney's fees in the event that STS filed a
motion for new trial or a motion to reconsider its counterclaims. 

 On April 22, 2005, STS moved for a new trial. The trial court denied STS's motion
for a new trial on May 12, 2005. On May 9, 2005, SIFCO filed a motion to substitute a party
name pursuant to rule 28 of the Texas Rules of Civil Procedure from Shiva Investment First,
L.L.C., as contained in the original petition, to Sid K. Seth a/k/a SIFCO, L.L.C. a/k/a Shiva
Investment First, L.L.C. See Tex. R. Civ. P. 28. The trial court granted SIFCO's motion to
substitute party name on May 12, 2005. This appeal ensued. 

II. Standard of Review

 Declaratory judgments are reviewed under the same standards as all other
judgments. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); In re Estate of
Schiwetz, 102 S.W.3d 355, 365 (Tex. App.-Corpus Christi 2003, no pet.). We look to the
procedure used to resolve the issue at trial to determine the standard of review on appeal.
Guthery v. Taylor, 112 S.W.3d 715, 720 (Tex. App.-Houston [14th Dist.] 2003, no pet.);
Roberts v. Squyres, 4 S.W.3d 485, 488 (Tex. App.-Beaumont 1999, pet. denied). The trial
court's conclusion, being one of law, will be upheld on appeal if it can be sustained on any
legal theory supported by the evidence. See Alma Invs., Inc. v. Bahia Mar Co-Owners
Ass'n, 999 S.W.2d 820, 823 (Tex. App.-Corpus Christi 1999, pet. denied). In this case, the
trial court determined the declaratory judgment issue through summary judgment
proceedings. 

 The function of summary judgment is to eliminate patently unmeritorious claims and
defenses, not to deprive litigants of the right to a trial by jury. Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no pet.). 
We review de novo a trial court's grant or denial of a traditional motion for summary
judgment. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing
Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz, 105
S.W.3d at 345. 

 Under a traditional motion for summary judgment, the movant must establish that no
material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz, 105
S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi 2002,
pet. denied). After the movant produces evidence sufficient to show it is entitled to
summary judgment, the nonmovant must then present evidence raising a fact issue. See
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed
material fact that precludes summary judgment, evidence favorable to the non-movant will
be taken as true. Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Every reasonable inference must be indulged in favor of the non-movant and any doubts
must also be resolved in its favor. Id. at 549. 

 When both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties' summary judgment
evidence and determine all questions presented. See FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872 (Tex. 2000); see also Warrantech Corp. v. Steadfast Ins. Co.,
210 S.W.3d 760, 765 (Tex. App.-Fort Worth 2006, no pet.). The reviewing court should
render the judgment that the trial court should have rendered. See FM Props., 22 S.W.3d
at 872; see also Warrantech, at 765.

III. Analysis

1. The November 24, 2004 order (9) 

 In its first issue, STS asserts that the trial court erred in granting SIFCO's cross-motion for summary judgment pertaining to its declaratory judgment because SIFCO failed
to meet its burden to show that no genuine fact issues exist thereby entitling STS to a
judgment as a matter of law. As a corollary, STS argues that by granting SIFCO's cross-motion for summary judgment, the trial court erred in holding that the lease expired on
September 1, 2004, and that it had been properly renewed. Conversely, SIFCO contends
that the lease language provides that the lease term did not commence until September 1,
1999, thus establishing that the primary term of the lease did not expire until September 1,
2004. In addition, SIFCO argues that it hand delivered its notice of renewal on January 30,
2004 to Wedgewood Universal Investments ("Wedgewood") and, subsequently, sent a
second renewal notice via certified mail on May 26, 2004, to Wedgewood. (10) As such,
SIFCO asserts that it effectively renewed the lease in accordance with the lease terms and
that it was entitled to a judgment as a matter of law.

 A. Applicable law

 The interpretation of an unambiguous contract is a question of law for the court to
decide. In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding)
(citing J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003)); Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996); Barrand, Inc.
v. Whataburger, Inc., 214 S.W.3d 122, 129 (Tex. App.-Corpus Christi 2006, pet. denied). 
Contracts that are not deemed to be ambiguous are enforced as written. See, e.g.,
Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1996). If a written contract
is worded so that it can be given a definite or certain legal meaning, then it is unambiguous. 
Gulf Ins. Co. v. Burns Motors, 22 S.W.3d 417, 423 (Tex. 2000); see Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983); Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d
124, 131 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd). 

 In construing a written contract, our primary concern is to ascertain the true intent of
the parties as expressed in the instrument. J.M. Davidson, 128 S.W.3d at 229; Coker, 650
S.W.2d at 393. In Texas, a writing is generally construed most strictly against its author and
leases, in particular, are construed against the lessor. See Republic Nat'l Bank v. Nw. Nat'l
Bank, 578 S.W.2d 109, 115 (Tex. 1978); Sirtex Oil Indus., Inc. v. Erigan, 403 S.W.2d 784,
788 (Tex. 1966); see also Bloys v. Wilson, No. 03-03-00193-CV, 2004 Tex. App. LEXIS
800, at *15 (Tex. App.-Austin Jan. 29, 2004, pet. denied). We must examine and consider
the entire lease in an effort to harmonize and give effect to all provisions so that none are
rendered meaningless and no single provision taken alone should be controlling. J.M.
Davidson, 128 S.W.3d at 229; Coker, 650 S.W.2d at 393; Sun Oil Co. v. Madeley, 626
S.W.2d 726, 731 (Tex. 1981). If the written instrument is so worded that it can be given a
definite or certain legal meaning, then the contract may be construed as a matter of law. 
Coker, 650 S.W.2d at 393. 

 B. Discussion

 STS argues that the language provided in the lease clearly establishes that April 1,
1999, marks the commencement of the lease term. As such, STS contends that the lease
expired on April 1, 2004, when SIFCO allegedly failed to provide notice of its intent to renew
the lease. (11) With regard to the lease term, the lease provided:

 1. TERM OF LEASE


 The primary term of this lease shall be five years and shall commence on
April 1, 1999, subject to Landlord's substantial completion of certain build out
work described below, and shall end on the first day of the month following a
five year period. Actual rent charge shall not start until Landlord has
substantially completed build out constructions.


(Emphasis added). We must determine the meaning of the phrases, "subject to" and
"substantial completion," in order to accurately assess when the lease term commenced. 
See Gulf Ins. Co., 22 S.W.3d at 423; see also Coker, 650 S.W.2d at 393; Cook
Composites, Inc., 15 S.W.3d at 131. 

 Black's Law Dictionary defines "subject to" as ". . . governed or affected by; provided
that; provided . . . ." Black's Law Dictionary 1425 (6th ed. 1990). Clearly, the "subject to"
language provided in the lease creates a condition precedent whereby SIFCO's duty to pay
rent in accordance with the lease and its right to occupy the premises does not commence
until the landlord substantially completes the build out construction on the premises. See
State Bank & Trust Co. v. First Nat'l Bank, 635 S.W.2d 807, 809 (Tex. App.-Corpus Christi
1982, writ ref'd n.r.e.); see also TransTexas Gas Corp. v. Forcenergy Onshore, Inc., No. 13-02-387-CV, 2004 Tex. App. LEXIS 7877, at **13-14 n.7 (Tex. App.-Corpus Christi Aug. 26,
2004, pet. denied) ("A 'condition precedent' is a condition that must be fulfilled before a duty
arises."). 

 The term "substantial completion" is associated with an underlying construction
contract or construction project undertaken by the landlord involving build-out work for the
Taco Bell outlet which SIFCO leased. This Court has held that in regard to construction
disputes, "substantial completion" is the "'full performance' of construction and all related
obligations." Gutierrez v. Elizondo, 139 S.W.3d 768, 774 (Tex. App.-Corpus Christi 2004,
no pet.) (citing Transamerica Ins. Co. v. Housing Auth. of Victoria, 669 S.W.2d 818, 823
(Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.)).

 The parties do not dispute that the build-out construction was not completed until
September 1, 1999, or that SIFCO did not begin to make rental payments and did not
occupy the premises until September 1, 1999. Therefore, based on the foregoing, it is clear
that the parties did not intend for the lease term to commence until after the build-out
construction was completed on September 1, 1999. In harmonizing all lease provisions so
as to not render any provisions meaningless, we conclude that the lease term did not
commence until September 1, 1999. See J.M. Davidson, 128 S.W.3d at 229; Coker, 650
S.W.2d at 393; Sun Oil Co., 626 S.W.2d at 731. As such, the primary term of the lease did
not terminate until September 1, 2004.

 We must now review the record to see if SIFCO provided notice to effectively renew
the lease prior to the end of the lease term on September 1, 2004. STS contends that
SIFCO never expressed its intent to extend the lease. Moreover, STS argues that if SIFCO
did, in fact, hand deliver notice of its intent to extend the lease on January 30, 2004, hand
delivery of the notice was not sufficient in accordance with the lease provisions that required
a tenant to notify the landlord of its intent to extend the lease by certified mail. Conversely,
SIFCO asserts that it provided Wedgewood with two written notices, on January 30, 2004
and on May 26, 2004, of its intent to extend the lease thereby satisfying the requirements
for extending the lease. 

 With respect to renewal of the lease term, the lease provided:

 Tenant, at Tenant's option and with, at least 60 day prior written notice
may elect to extend this lease for up to two additional five year periods--for
a total lease term of fifteen (15) years, subject to renewal provisions. Until
renegotiated or terminated, this lease shall continue on a 60-day monthly term
basis after the end of the primary period. 

 

 Either party must provide at least 60 days advanced written notice of
its intention to extend, renegotiate or terminate this agreement.


 . . . .


 25. NOTICES

 

 Notices to Tenant shall be by certified mail or other delivery to the
leased premises. Notice to the landlord shall be by certified mail to the place
where the rent is payable. 


 The record reflects that SIFCO delivered notice of its intent to extend the lease for
another five-year term to Wedgewood on January 30, 2004. SIFCO hand delivered this
notice to Wedgewood on the leased premises with its rental payment for the month of
February 2004. However, the lease clearly states that "[n]otice to the landlord shall be by
certified mail to the place where the rent is payable." Therefore, SIFCO's hand delivery of
the January 30, 2004 notice does not comport with the lease terms and thereby would not
be sufficient to extend the lease term. 

 However, in response to a letter sent by Wedgewood owner Sumer S. Pinglia on
April 5, 2004, notifying SIFCO that the "extension of this lease must be renegotiated,"
SIFCO, through its attorney, made a written request dated May 26, 2004, that "reaffirms its
[SIFCO] election to extend the Lease for an additional five year period." This written
request explicitly referenced the previous notice provided by SIFCO on January 30, 2004,
and included the notice as an attachment. In accordance with the provisions of the lease,
SIFCO sent this written request to Wedgewood via certified mail on May 26, 2004. The
record reflects that Janet Cupit, a representative from Wedgewood, signed the
accompanying return receipt for SIFCO's written notification to extend the lease on May 27,
2004. Given that the primary lease term did not terminate until September 1, 2004, it is
clear that SIFCO provided Wedgewood with sufficient written notice within the sixty-day
notice period provided in the lease. As a result, we conclude that the evidence establishes
that SIFCO effectively renewed the lease and was entitled to a judgment as a matter of law. 
See Alma Invs., Inc., 999 S.W.2d at 823. Accordingly, we overrule STS's first issue.

2. The March 23, 2005 order 


 In its second issue, STS complains that the trial court erred in granting SIFCO's
motion for summary judgment because the lease-renewal issue was resolved in the trial
court. STS primarily asserts that its claim against SIFCO for amounts due for dumpster
services was a separate agreement and was not a lease term. (12) STS argues that the trial
court erred in finding that SIFCO carried its burden on the issues of wavier and estoppel
and that no genuine issues of material fact existed thereby entitling SIFCO to a judgment
as a matter of law. Conversely, SIFCO contends that the amounts due for dumpster
services could not have been part of the lease, as originally pled by STS in its counterclaim
because the lease provided that "no amendments or modifications are binding unless stated
in writing and executed by both parties." SIFCO further contends that STS, as landlord, was
responsible for dumpster fees in accordance with the lease. Finally, SIFCO asserts that
STS's counterclaim for amounts due for dumpster services and past due rent is barred by
the doctrines of waiver and estoppel.

 A. Applicable law

 Waiver is defined as "an intentional relinquishment of a known right or intentional
conduct inconsistent with claiming that right." Jernigan v. Langley, 111 S.W.3d 153, 157
(Tex. 2003) (citing Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987);
U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex. 1971)). A
waivable right may spring from law or from a contract. Tenneco Inc. v. Enter. Prods. Co.,
925 S.W.2d 640, 643 (Tex. 1996). Although waiver is ordinarily a question of fact for the
jury or the trier of the facts, when the facts and circumstances are admitted or clearly
established, the question becomes one of law. Id.; see Motor Vehicle Bd. of the Tex. Dep't
of Transp. v. El Paso Indep. Auto Dealers Assoc., Inc., 1 S.W.3d 108, 111 (Tex. 1999);
Ford v. Culbertson, 308 S.W.2d 855, 865 (Tex. 1958); Barrand, 214 S.W.3d at 144. (13)

 

 B. Discussion


 The record reflects that STS's counterclaims pertained to events that allegedly
transpired between 1999 and April 2003 when Jabe Energy Co. ("Jabe") owned the
property. In its counterclaims, STS asserts that SIFCO failed to pay its share of the cost
for dumpster services on the property. As such, STS argues that under section 18 of the
lease, it is entitled to terminate the lease, enter the premises, and remove all of SIFCO's
property for being in default. (14)

 As previously mentioned, STS now claims that the dumpster services were part of
a separate agreement and not contained within the lease. STS further argues that the
dumpster services amounted to an additional $229.98 per month owed by SIFCO to STS. 
STS, however, has not presented any evidence of the alleged dumpster services agreement
to either this Court or the trial court. Moreover, the record is devoid of any agreement
between Jabe and SIFCO involving dumpster services. In fact, the lease provides that:

 2. BUILD OUT (in accordance with SIFCO plans, dated January 11, 1999
attached)

 

 (A) Landlord shall:

 

 . . . .

 

 Be responsible for dumpster for SIFCO daily garbage.

 

 . . . .

 

 7. UTILITIES

 

 Landlord shall pay for Tenant's [SIFCO] utility usage of electricity,
dumpster, and water only.


Therefore, it is clear that the lease provides textual support for SIFCO's argument that STS,
as the landlord, was responsible for the costs associated with dumpster services. 

 In an attempt to bootstrap its argument that it can terminate the lease, enter the
premises, and remove all of SIFCO's property from the premises for breach of the lease,
STS uses a notification letter sent by Sumer S. Pinglia, owner of Wedgewood, on April 5,
2004, to explain that SIFCO failed to pay rent on a number of occasions. In particular, STS
references the following paragraph in the Pinglia letter:

 Our records show that Taco Bell [SIFCO] did not remit the increased rent in
year two, three and four. This past due balance equates to seven thousand
two hundred dollars ($7200.00) which is and has been past due. The $7200,
does not include any late fees as detailed in the lease agreement. 


 The Pinglia letter clearly does not make any reference to dumpster services. 
Moreover, the $7200.00 in past due rent refers to the following provision contained in the
lease whereby rent increases each year of the primary lease term:

 

 4. RENT

 

 Tenant agrees and shall pay Landlord . . . the total sum of ONE HUNDRED
SIXTY TWO THOUSAND ($162,000) DOLLARS, subject to paragraph five
below, payable without demand in monthly installments as follows:

 

 first 12 months $2500.00/month (first month prorated)

 second 12 months $2600.00/month

 third 12 months 

 through 60 months $2800.00/month


 However, Wedgewood executed a Tenant Estoppel Certificate to its lender, Central
Bank, on May 17, 2004, making the following statements in reference to SIFCO's alleged
past due rent and the alleged subsequent dumpster services agreement:


 There are no other agreements, written or oral, between Landlord
[Wedgewood] and Tenant [SIFCO], other than the Lease, affecting the
Premises or Tenant's obligation to pay rentals under the Lease, and Tenant
does not claim a right to any concessions, free rent, or rental abatement. 
Tenant's obligation to pay rentals are current. Landlord does not claim a right
to any other obligations or monies from Tenant.


(Emphasis added). (15) 


 The Tenant Estoppel Certificate clearly waives any potential claim Wedgewood or
any subsequent landlord would have against SIFCO for past due rent occurring before May
17, 2004, which includes the $7200.00 claim for past due rent presented in Pinglia's April
5, 2004 notification letter. See Tenneco Inc., 925 S.W.2d at 643 (". . . waiver can be
asserted against a party who intentionally relinquishes a known right or engages in
intentional conduct inconsistent with claiming that right. . . . A party's express renunciation
of a known right can establish waiver."); see also Ford, 308 S.W.2d at 865. The Ford court
notes that:

 A waiver takes places where one dispenses with the performance of
something which he had a right to exact, and occurs where one in possession
of any right, whether conferred by law or by contract, with full knowledge of
the material facts, does or forbears to do something, the doing of which or the
failure or forbearance to do which is inconsistent with the right or his intention
to rely upon it. Waiver, of course, is a matter or question of intention.


Ford, 308 S.W.2d at 865 (internal citations omitted). Because Wedgewood waived any right
to past due rental payments occurring before May 17, 2004, and because the lease
provides that STS is responsible for the costs associated with providing dumpster services
to SIFCO, we conclude that the trial court did not err in finding that no genuine issues of
material fact existed on STS's breach of lease counterclaims. (16) We, therefore, overrule
STS's second issue.


3. Attorney's Fees


 By its third issue, STS asserts, without citing relevant authority, that the award of
attorney's fees was improper because the issue of lease renewal had been decided and
resolved by the trial court's order issued on November 24, 2004. (17) Because the trial court's
determination of the lease renewal issue resolved the declaratory judgment action, STS
contends that there was no basis for the trial court to award attorney's fees in its March 23,
2005 order. SIFCO, on the other hand, argues that the language of the lease "provides that
the 'prevailing party . . . shall be entitled' to recover its attorneys' [sic] fees." Therefore,
because SIFCO was the prevailing party under the trial court's March 23, 2005 order, the
trial court did not abuse its discretion in awarding SIFCO attorney's fees. (18) 

 A. Standard of review

 

 An award of attorney's fees is reviewed under an abuse of discretion standard. Dail
v. Couch, 99 S.W.3d 390, 391 (Tex. App.-Corpus Christi 2003, no pet.). The test for abuse
of discretion is to determine whether the trial court acted without reference to any guiding
rules or principles, or whether under the circumstances of the case, the trial court's actions
were arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985).

 B. Applicable law

 Under Texas statutory law, a party may recover reasonable attorney's fees from an
individual or corporation, in addition to the amount of a valid claim and costs, if the claim is
for breach of an oral or written contract. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2006). 

 In addition, parties may also recover attorney's fees if they arrange for such recovery
as a contractual term. Alma Group, L.L.C. v. Palmer, 143 S.W.3d 840, 845 (Tex.
App.-Corpus Christi 2004, pet. denied) (citing New Amsterdam Cas. v. Tex. Indus., Inc.,
414 S.W.2d 914, 915 (Tex. 1967)). The parties to the contract may create their own terms
which need not correspond to chapter 38 of the civil practice and remedies code. Wayne
v. A.V.A. Vending Inc., 52 S.W.3d 412, 417 (Tex. App.-Corpus Christi 2001, pet. denied)
(citing One Call Sys., Inc. v. Houston Lighting & Power, 936 S.W.2d 673, 676 (Tex.
App.-Houston [14th Dist.] 1996, writ denied)). The parties may agree to terms for the
recovery of fees that are either more or less liberal than the terms presented in chapter 38. 
Wayne, 52 S.W.3d at 418. In such cases, it is the language of the contract, not the statute,
that governs. Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc., 938 S.W.2d 102, 118
(Tex. App.-Houston [14th Dist.] 1996, no writ). Furthermore, it is the language of the
agreement itself--not the present interpretation of the parties--that determines the intent
of the parties, and the agreement must be enforced as written. Pegasus Energy Group, Inc.
v. Cheyenne Petroleum Co., 3 S.W.3d 112, 121 (Tex. App.-Corpus Christi 1999, pet.
denied).

 Under Texas law, a "prevailing party" is a party who successfully prosecutes the
action or successfully defends against it, prevailing on the main issue, even if not to the
extent of its original contention. Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex.
App.-Corpus Christi 1983, no writ); see Flagship Hotel, Ltd. v. City of Galveston, 117
S.W.3d 552, 564 (Tex. App.-Texarkana 2003, pet. denied). Determining whether a party
is the prevailing or successful party must be based upon success on the merits and not on
whether or not damages were awarded. Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731,
749 (Tex. App.-Fort Worth 2005, no pet.); Scholl v. Home Owners Warranty Corp., 810
S.W.2d 464, 468 (Tex. App.-San Antonio 1991, no writ); Perez v. Baker Packers, 694
S.W.2d 138, 143 (Tex. App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.).

 

 C. Discussion 


 With regard to attorney's fees and prevailing parties, the lease provides:


 35. ATTORNEY FEES

 

 Any signatory to this lease agreement who is the prevailing party in any
legal proceeding affecting this lease shall be entitled to reimbursement of
reasonable attorney fees and other directly related legal costs incurred in
enforcing or defending this agreement. 


It is clear that the lease provides textual support for the trial court's awarding of attorney's
fees to the prevailing party in any legal proceeding concerning the lease. See Wayne, 52
S.W.3d at 417. In reviewing STS's counterclaims, which were the subject of the trial court's
March 23, 2005 order, STS originally alleged (1) that the dumpster services were part of the
lease agreement, (2) that SIFCO was in default with respect to payment for the dumpster
services, and (3) that SIFCO failed to pay increased rent in years two through five of the
lease. Therefore, STS's counterclaims involved the lease, which SIFCO subsequently
defended. As a result, SIFCO was vindicated by the trial court's judgment as the prevailing
party. See Dear v. City of Irving, 902 S.W.2d 731, 739 (Tex. App.-Austin 1995, writ
denied); see also Hoffman, 662 S.W.2d at 441 

 Given that the lease provides textual support for awarding attorney's fees to the
prevailing party in a dispute, we conclude that the trial court did not abuse its discretion in
awarding SIFCO attorney's fees pertaining to STS's counterclaim. See Downer, 701
S.W.2d at 241-42; Palmer, 143 S.W.3d at 845; Dail, 99 S.W.3d at 391. Accordingly, we
overrule STS's third issue.


4. STS's motion for a new trial

 

 In its fourth issue, STS contends that it was entitled to a new trial because its
attorney allegedly was not served with a copy of SIFCO's motion for summary judgment
pertaining to its counterclaim and was not provided with notice of the hearing date on
SIFCO's motion for summary judgment. (19) In response, SIFCO argues that STS was
properly served and provided notice of its motion for summary judgment, as evidenced by
the return receipt signed for by "G. Atkinson" when delivered to the physical address
provided by STS's trial counsel. 

 



 A. Standard of review

 

 A trial court has discretion to either grant or deny a new trial, and we will not disturb
its decision absent an abuse of that discretion. Brandt v. Surber, 194 S.W.3d 108, 133
(Tex. App.-Corpus Christi 2006, pet. filed) (citing Brown v. Hopkins, 921 S.W.2d 306, 311
(Tex. App.-Corpus Christi 1996, no writ)). A trial court abuses its discretion when the
record clearly shows its decision was arbitrary and unreasonable. Id. (citing Simon v. York
Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987)). In determining whether an abuse
of discretion has occurred, we view the evidence in a light most favorable to the court's
decision and indulge every legal presumption in favor of its judgment. In re J.I.Z., 170
S.W.3d 881, 883 (Tex. App.-Corpus Christi 2005, no pet.). Therefore, the party
complaining of the trial court's abuse of discretion has the burden to bring forth a record
showing such abuse. Simon, 739 S.W.2d at 795. 


 B. Discussion

 STS, in its motion for new trial, filed an affidavit from its trial counsel, Sajju George
("George"), noting the following:

 My address on file with this Court and which is included on all of
Defendant's [STS] pleadings in the above styled and numbered cause is Sajju
George, P.C. P.O. Box 667297, Houston, TX 77266-7297. On March 1,
2005, Plaintiff, SIFCO, L.L.C., had its Summary Judgment motion hand-delivered to an executive office suite that I use to meet with my clients and for
mediations. I did not receive this document until after I had received notice
from this Court dated March 24, 2005 that Judge Culver had signed the order
granting Plaintiff's [SIFCO] Summary Judgment Motion. I received notice
from this Court via regular mail at my P.O. Box on or about March 29, 2005.


As a result of the apparent lack of notification, STS did not file a response to SIFCO's
motion for summary judgment pertaining to its counterclaim. Furthermore, the record
reflects that all of the pleadings filed by STS contain the following address for George: 
"P.O. Box 667297, Houston, Texas 77266-7297."

 In response to STS's motion for new trial, SIFCO filed an affidavit from its trial
counsel, Chris Hanslik, noting the following:

 

 On November 11, 2004, I filed a motion for summary judgment on
behalf of Plaintiff [SIFCO] seeking a declaratory judgment that the lease at
issue was properly renewed for an additional 5 year term (the 'November
Motion). The November Motion was served via hand delivery to Defendant's
[STS] then counsel of record, Sajju George. I contacted Mr. George to obtain
a physical address that hand deliveries could be sent to. I was given the
following address: 3730 Kirby Drive, Suite 1200, Houston, Texas 77089
["Kirby Address"]. That is the address that the November Motion was hand
delivered to. The delivery service used by my office provides an on-line
tracking system to determine when packages were received. The November
Motion was successfully delivered to the above address on November 11,
2004 at 9:32 a.m. . . . The November Motion was accepted by "G. Atkinson."
. . . On behalf of the Defendant, Mr. George filed a response to the
November Motion on November 19, 2004.

 

 On March 1, 2005, I filed a second motion for summary judgment on
behalf of Plaintiff (the 'March Motion'). The March Motion sought summary
judgment on the counterclaims filed by Defendant. The March Motion was
served via hand delivery to Sajju George (Defendant's counsel of record) at
the same physical address used for the November Motion. The same
delivery service delivered the March Motion. The March Motion was
successfully delivered to the Kirby address (provided by Mr. George) on
March 1, 2005 at 3:30 p.m. . . . The March Motion was accepted by the same
"G. Atkinson." . . . Although the March Motion was served and accepted in
the exact same manner as the November Motion, Defendant did not file a
response to the March Motion.


 SIFCO also included a record of deliveries to support Hanslik's affidavit that the
March 23, 2005 motion was delivered to STS's trial counsel. (20) According to the record of
deliveries supplied by SIFCO, items were delivered to George at the above referenced Kirby
address on November 11, 2004 and on March 1, 2005. Both items were delivered by Jan
Searson and signed for by "G. Atkinson." 

 Rule 21a of the Texas Rules of Civil Procedure governs the delivery of notice in this
action. See Tex. R. Civ. P. 21a. Rule 21a provides, in relevant part, that:

 

 Every notice required by these rules, and every pleading, plea, motion,
or other form of request . . . may be served by delivering a copy to the party
to be served, or the party's duly authorized agent or attorney of record, as the
case may be, either in person or by agent or by courier receipted delivery or
by certified or registered mail, to the party's last known address . . . . 


Id. Clearly, rule 21a authorizes the use of courier receipted delivery of notifications to
parties. See id. Therefore, we must determine whether "G. Atkinson" was George's
employee or agent. See Elite Towing Inc. v. LSI Fin. Group, 985 S.W.2d 635, 643 (Tex.
App.-Austin 1999, no pet.) ("It is universally recognized that notice to [an] agent is notice
to the principal. . . . [A] attorney is deemed to have received notice when the receipt for the
notice is signed by that attorney's agent or employee.").

 The general rule governing agency relationships is that:

 As between parties to the relation, there must be a meeting of the minds in
establishing the agency, and the consent of both the principal and the agent
is necessary to create the agency, although such consent may be implied
rather than expressed. The principal must intend that the agent act for him,
the agent must intend to accept the authority and act on it, and the intention
of the parties must find expression in either words or conduct between them.


Grissom v. Watson, 704 S.W.2d 325, 326 (Tex. 1986) (quoting First Nat'l Bank v. Farmers
& Merchants State Bank, 417 S.W.2d 317, 330 (Tex. Civ. App.-Tyler 1967, writ ref'd
n.r.e.)). Agency relationships may be found from underlying facts of direct and
circumstantial evidence showing the relationship of the parties. Elite Towing Inc., 985
S.W.2d at 643 (citing Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 760 (Tex.
App.-Houston [14th Dist.] 1997, no writ); Stanford v. Dairy Queen Prods., 623 S.W.2d 797,
800-01 (Tex. App.-Austin 1981, writ ref'd n.r.e.)). 

 We find that an agency relationship existed between "G. Atkinson" and George. See
Grissom, 704 S.W.2d at 326 (concluding that an agency relationship existed between two
law firms when one firm filed an answer on behalf of the other law firm in the same case,
and notice of docket setting was sent to the agent/firm was imputed to the principal since
it was acquired in connection with business transaction for principal). Although the record
does not clearly establish the true identity of "G. Atkinson," the underlying facts show that
"G. Atkinson" was, in fact, present at George's place of business when both of SIFCO's
motions for summary judgment were delivered. "G. Atkinson" signed return receipts for both
of the deliveries. In addition, George did not object to "G. Atkinson" signing the return
receipt for the initial delivery from SIFCO that occurred on November 11, 2004. Finally,
though George attached an affidavit with his motion for new trial in which he stated he
personally did not receive notice, he never indicated that "G. Atkinson" was not authorized
to receive such notice for him. (21)

 In light of the circumstances in this case, we conclude that "G. Atkinson" was
George's agent and was authorized to accept notice on behalf of George. Therefore,
SIFCO satisfied its duty to notify STS in accordance with rule 21a. See Tex. R. Civ. P. 21a. 
We therefore conclude that the trial court did not act arbitrarily or unreasonably in denying
STS's motion for new trial based upon an alleged lack of notification. See Brandt, 194
S.W.3d at 133 (citing Simon, 739 S.W.2d at 795). Accordingly, we overrule STS's fourth
issue. 

5. SIFCO's assumed name and its motion to substitute parties


 In its fifth issue, STS raises three sub-issues concerning a defect in SIFCO's name. 
First, it argues that the trial court erred in granting both of SIFCO's motions for summary
judgment because "SIFCO, L.L.C." was not a party to the lease at the time the lease was
executed and thereby lacked standing. Second, it contends that the trial court erred in
granting "Shiva Investment First, L.L.C." relief because it is an entity that does not exist. 
Third, it asserts that the trial court should not have allowed for the substitution of Sid K. Seth
a/k/a SIFCO, L.L.C. a/k/a Shiva Investment First, L.L.C. because SIFCO was engaging in
a "shell game" whereby "[a]fter the potential of paying attorney's fees had passed, the real
tenant was substituted as plaintiff." We construe these sub-issues as an attack on SIFCO's
alleged defective assumed name and SIFCO's capacity to initiate suit. In response, SIFCO
argues that the trial court did not abuse its discretion in granting SIFCO's motion to
substitute parties, in accordance with rule 28 of the Texas Rules of Civil Procedure and the
supreme court's decision in Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46 (Tex. 2003). 
See Tex. R. Civ. P. 28. (22)


 A. Assumed name certificate (23)

 While not explicitly addressed by STS on appeal or in any pleadings before the trial
court, but because it is relevant to our disposition, we will review SIFCO's filing of its
assumed name certificate as it pertains to STS's first sub-issue.

 Under the Assumed Business or Professional Name Act, a limited liability company 

that regularly conducts business in Texas under an assumed name must file an assumed
name certificate. Tex. Bus. & Com. Code Ann. § 36.11 (Vernon 2002). The Act provides
criminal and civil penalties for failing to file a certificate, including denial of the use of Texas
courts:

 Failure to comply with the provisions of this chapter by any person shall
not impair the validity of any contract or act by such person nor prevent such
person from defending any action or proceeding in any court of this state, but
such person shall not maintain an action or proceeding in any court of this
state arising out of a contract or act in which an assumed name was used
until an original, new, or renewed assumed business or professional name
certificate has been filed as required by this chapter. In an action or
proceeding brought against a person that has not complied with this chapter,
the plaintiff or other party bringing the suit or proceeding may recover, if the
court shall determine, expenses incurred, including attorney's fees, in locating
and effecting service or process on such person.


Tex. Bus. & Com. Code Ann. § 36.25 (Vernon 2002) (emphasis added). 

 This provision authorizes a court to abate an action until the certificate is filed. Cont'l
Contractors, Inc. v. Thorup, 578 S.W.2d 864, 866 (Tex. Civ. App.-Houston [1st Dist.] 1979,
no writ) (noting that a plaintiff's right to bring suit in the capacity in which he sues is properly
raised by a plea in abatement, or it is waived) (citing Coakley v. Reising, 436 S.W.2d 315
(Tex. 1968)); see Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d 595, 600 (Tex.
App.-Houston [14th Dist.] 1994, writ denied); Luloc Oil Co. v. Caldwell County, 601 S.W.2d
789, 794 (Tex. Civ. App.-Beaumont 1980, writ ref'd n.r.e.). Dismissal of a plaintiff's cause
of action based upon a failure to file an assumed name certificate "should not be granted
until the cause of action has been abated, the plaintiff has been given an opportunity to cure
the defect, and has failed to do so." See Lighthouse Church, 889 S.W.2d at 600 (citing
Mercure Co. v. N.V. Rowland, 715 S.W.2d 677, 680 (Tex. App.-Houston [1st Dist.] 1986,
writ ref'd n.r.e.)); see also Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46 (Tex. 2003). (24)

 In addition, the plain language of section 36.25 of the business and commerce code
provides that a failure to file an assumed name certificate does not render a plaintiff's claim
void. Tex. Bus. & Com. Code Ann. § 36.25; see also Paragon Oil Syndicate v. Rhoades
Drilling Co., 277 S.W.1036, 1037 (Tex. 1925). Instead, it affects a plaintiff's capacity to
bring suit. Hotze v. Brown, 9 S.W.3d 404, 413 (Tex. App.-Houston [14th Dist.] 1999), rev'd
in part on other ground sub nom. Brown v. Todd, 53 S.W.3d 297 (Tex. 2001); Nootsie, Ltd.
v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996) ("[A] party has
capacity when it has the legal authority to act, regardless of whether it has a justiciable
interest in the controversy.") (emphasis omitted). When capacity is contested, Rule 93 of
the Texas Rules of Civil Procedure requires that a verified plea be filed unless the truth of
the matter appears in the record. Tex. R. Civ. P. 93; see Pledger v. Schoellkopf, 762
S.W.2d 145, 146 (Tex. 1988) (per curiam).

 The record reflects that STS has never raised the fact that SIFCO did not file its
assumed name certificate with the county clerk of Fort Bend County and the Texas
Secretary of State in the trial court. Furthermore, the record is devoid of any motion filed
by STS to abate the trial court proceedings until SIFCO had properly filed its assumed name
certificate. (25) Therefore, because STS failed to file a motion to abate the trial court
proceedings and because STS did not raise an argument with the trial court pertaining to
the untimeliness of SIFCO's assumed name certificate filing, we find that STS waived this
complaint. (26) See Nootsie, 925 S.W.2d at 662; Lighthouse Church, 889 S.W.2d at 600;
Luloc Oil, 601 S.W.2d at 794.


 B. SIFCO's assumed names

 In its second sub-issue, STS argues that the trial court erred in awarding relief to an
entity, Shiva Investment First, L.L.C., that does not exist. Civil suits may only be maintained
against parties having an actual or legal existence. See Henson v. Estate of Crow, 734
S.W.2d 648, 649 (Tex. 1987). However, under Texas Rule of Civil Procedure 28, a private
entity doing business under an assumed name may sue or be sued in its assumed name
or common name for the purpose of enforcing a substantive right. See Tex. R. Civ. P. 28;
see also Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 48 (Tex. 2003). 


 Rule 28 of the Texas Rules of Civil Procedure provides:

 

 Any partnership, unincorporated association, private corporation, or
individual doing business under an assumed name may sue or be sued in its
partnership, assumed or common name for the purpose of enforcing for or
against it a substantive right, but on a motion by any party or on the court's
own motion the true name may be substituted. 


Tex. R. Civ. P. 28 (emphasis added). STS contends that "Rule 28, Tex. R. Civ. P.
notwithstanding, there must be some limitations on continuously changing the name of the
party among two limited liability companies and an individual." 

 The record contains evidence that Seth filed the proper certificates with the Texas
Secretary of State and the Fort Bend County clerk establishing Shiva Investment First,
L.L.C. as an assumed name for SIFCO, L.L.C. The lease itself recognizes the following: 
"This lease agreement ("Agreement") is made and entered into by and between Jabe
Energy Company, Inc. ("Jabe" or "Landlord") and Sid K. Seth, an individual ("Tenant" during
[sic] business as Shiva Investment First, L.L.C. "SIFCO".). In all correspondences between
STS and SIFCO, SIFCO used either Shiva Investment First, L.L.C. or SIFCO, L.L.C. to
identify itself. The record also contains correspondences from STS whereby STS identified
SIFCO by its assumed names of SIFCO, L.L.C. and Shiva Investment First, L.L.C. SIFCO
identified itself as SIFCO, L.L.C. or Shiva Investment First, L.L.C. in all pleadings in the trial
court. Further, rental payments owed by SIFCO were paid from a designated checking
account bearing the name, "SIFCO, L.L.C." We, therefore, conclude that SIFCO used the
names Shiva Investment First, L.L.C. and SIFCO, L.L.C. as assumed names in transacting
and corresponding with STS. See Tex. R. Civ. P. 28; see also Sibley, 111 S.W.3d at 48,
52-53; Chilkewitz v. Hyson, 22 S.W.3d 825, 830 (Tex. 1999) ("Rule 28 allows suit directly
against the correct party in its assumed name."). (27) As a result, SIFCO, L.L.C. was a party
to the lease by virtue of its assumed name, Shiva Investment First, L.L.C., and was entitled
to relief. See Sibley, 111 S.W.3d at 52-53; see also Tex. R. Civ. P. 28.

 C. SIFCO's motion to substitute parties

 In the third sub-issue, STS argues, without citing relevant authority, that "the trial
court erred in substituting Sid K. Seth a/k/a SIFCO, L.L.C. a/k/a Shiva Investment First,
L.L.C. as Plaintiff for Shiva Investment First, L.L.C." Because STS has inadequately briefed
this sub-issue, we will not address it. (28) Tex. R. App. P. 38.1(h). Accordingly, we overrule
STS's fifth issue.


IV. Conclusion


 Having overruled all of STS's issues, we affirm the judgment of the trial court.





 ___________________________

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 17th day of January, 2008. 
1. The first issue in this opinion addresses STS's first, second, and third issues, as presented in its
brief.
2. The second issue in this opinion addresses STS's fourth and fifth issues, as presented in its brief.
3. The third issue in this opinion addresses STS's sixth issue, as presented in its brief.
4. The fourth issue in this opinion addresses STS's seventh issue, as presented in its brief.
5. The fifth issue in this opinion addresses STS's eighth, ninth, and tenth issues, as presented in its
brief.
6. Throughout the duration of SIFCO's lease, the leased property has been owned by the following
three entities: (1) Jabe Energy Co. ("Jabe") from the initial signing of the lease until April 2003; (2)
Wedgewood Universal Investments ("Wedgewood") from April 2003 to June 30, 2004; and (3) STS Gas
Services, Inc. ("STS") from July 1, 2004, to the present. Jabe and Wedgewood are not parties to this appeal.
7. The lease also included the following provision regarding choice of law:


 31. TEXAS LAW TO APPLY

 

 This lease shall be construed under and in accordance with the laws of the state of Texas.
8. The record does not reflect that STS commenced eviction proceedings at any time between March
31, 2004, and October 7, 2004, when SIFCO filed its original petition. STS did send a letter on September
2, 2004, which provided ". . . landlord is forced to demand that you, Sid K. Seth, an individual, doing business
as Shiva Investment First, L.L.C. and Taco Bell, vacate the premises . . . on or before 60 days from the receipt
of this notice but no later than November 7, 2004." STS sent another letter on September 13, 2004, notifying
SIFCO that the lease had not been renewed and that it must "vacate the leased premises on or before
November 2, 2004."
9. STS does not allege at any time that it was not bound by the lease or any subsequent agreements
between SIFCO and the previous landlords of the leased premises.
10. Wedgewood was the landlord during the relevant time period associated with SIFCO's attempts
to renew the lease.
11. In its "NOTICE TO HOLDOVER TENANT" dated September 2, 2004, STS notified SIFCO that the
lease expired on April 1, 2004, and that SIFCO was "now holding over and continuing in possession of the
rental until after the expiration of your rental agreement and without the permission of the owner." The record
does not contain an explanation from STS as to why it waited until September 2, 2004, to notify SIFCO of the
expiration of the lease as opposed to notifying SIFCO on April 1, 2004, or shortly thereafter.
12. In its original counterclaim, STS contends that SIFCO was in breach of the lease for failure to pay
for dumpster services and increased rental obligations for years two, three, four, and five of the lease. 
However, on appeal, STS claims that the agreement for dumpster services was not a part of the lease, but
continues to allege that SIFCO has not paid past due rental obligations in accordance with the lease. As such,
it is clear that STS is attempting to recast its pleadings on appeal.
13. With regard to past due rent, SIFCO relies heavily on a Tenant Estoppel Certificate executed by
Wedgewood. Only on appeal does STS object to and challenge the authenticity and interpretation of the
Tenant Estoppel Certificate which was attached to SIFCO's motion for summary judgment filed on March 1,
2005. Because STS did not object to the Tenant Estoppel Certificate to the trial court, its objections are
untimely and therefore waived. See Tex. R. App. P. 33.1. Moreover, Wedgewood admitted in the Tenant
Estoppel Certificate that SIFCO was current in its rental obligations and that no other agreements between
Wedgewood and SIFCO existed. As such, we will determine waiver as a matter of law. See Motor Vehicle
Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto Dealers Assoc., Inc., 1 S.W.3d 108, 111 (Tex. 1999);
Tenneco Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996); Barrand, Inc. v. Whataburger, Inc.,
214 S.W.3d 122, 129 (Tex. App.-Corpus Christi 2006, pet. denied). 
14. Section 18 of the lease provides:


 18. TENANT DEFAULT AND REMOVAL OF ABANDONED PROPERTY

 

 If Tenant abandons the premises or otherwise defaults in the performance of any
obligations or covenants herein, Landlord may enforce the performance of this lease in any
manner provided by law. This lease may be terminated at Landlord's discretion if such
abandonment or default continues for a period of 15 days after landlord notifies Tenant of
such abandonment or default and Landlord states Landlord's intention to declare this lease
terminated. Such notice shall be performed in person or by certified mail.

 

 If Tenant has not completely removed or cured the default within the 15-day period,
the lease shall terminate. Thereafter Landlord, or its agents shall have the right to enter the
premises and remove all property. Upon default by Tenant, the unpaid portion of the rental
from paragraph 5 above, shall become due and payable.
15. Pinglia signed the Tenant Estoppel Certificate indicating that he agreed that SIFCO was current in
its rental payments and that there were not any other agreements between SIFCO and Wedgewood.
16. The trial court's March 23, 2005 order is clearly limited to STS's counterclaims for breach of the
lease. Accordingly, we need not discuss STS's complaint concerning the lease renewal issue.
17. The trial court, in its November 24, 2004 order, awarded SIFCO "reasonable and necessary
attorney's fees in the amount of $13,096.50 and expenses in the amount of $510.30." In addition, the trial
court further awarded SIFCO (1) $5,000 in attorney's fees in the event that STS files a motion for new trial or
a motion to reconsider, (2) $10,000 in attorney's fees in the event an appeal is filed with the Texas Court of
Appeals, and (3) $ 10,000 in attorney's fees in the event an appeal is filed with the Texas Supreme Court. 
18. The March 23, 2005 order awarded SIFCO "reasonable and necessary attorney's fees incurred
since December 1, 2004 in the amount of $14,348.00 and expenses in the amount of $22.85." In the March
23, 2005 order, the trial court further awarded SIFCO (1) $5,000 in attorney's fees in the event that STS files
a motion for new trial or a motion to reconsider, (2) $10,000 in attorney's fees in the event an appeal is filed
with the Texas Court of Appeals, and (3) $ 10,000 in attorney's fees in the event an appeal is filed with the
Texas Supreme Court. 
19. The record contains a notice of oral hearing on STS's motion for reconsideration of its
counterclaims and SIFCO's cross-motion for summary judgment scheduled for May 12, 2005. However, the
motion is not included in the record and it is not clear as to whether a hearing was held.
20. The record does not contain information as to the exact company SIFCO used to deliver
notifications to STS's trial counsel. However, the record of deliveries provided by the delivery company
contains all of the pertinent information to determine if delivery actually occurred and to whom the deliveries
were made.
21. We note that it is true that a party is not deemed to have received notice when such notice is signed
and accepted by one who has no authority to sign it. See Elite Towing Inc. v. LSI Fin. Group, 985 S.W.2d 635,
643 (Tex. App.-Austin 1999, no pet.). However, STS has not established that "G. Atkinson" was not an
employee, agent, partner, or associate of George's. Moreover, STS did not object to the fact that "G.
Atkinson" signed for the delivery of SIFCO's November 11, 2004 motion for summary judgment. In fact, STS
timely filed a response to SIFCO's November 11, 2004 motion.
22. Misidentification and misnomer are not issues in this appeal because it was SIFCO, the entity using
the assumed name, who was the plaintiff in the underlying lawsuit against STS. See Chilkewitz v. Hyson, 22
S.W.3d 825, 828 (Tex. 1999) ("misidentification arises when two separate legal entities actually exist and a
plaintiff mistakenly sues the entity with a name similar to that of the correct entity. . . . Misnomer arises when
a plaintiff sues the correct entity but misnames it.") (citing Enserch Corp. v. Parker, 794 S.W.2d 2, 4-5 (Tex.
1990)).
23. STS did not reference SIFCO's apparent untimely filing of its assumed name certificate on appeal
or in any pleading before the trial court. 
24. In Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d 595, 599-600 (Tex. App.-Houston
[14th Dist.] 1994, writ denied), appellee directly attacked appellant's standing to bring suit in a contractual
dispute between a bank and a defunct corporation. Appellee noted that no assumed name certificates were
filed with the county clerk, and, as a result, appellant was precluded from bringing the original lawsuit. Id. at
599. In analyzing the business and commerce code and relevant case law, the appellate court held that
because appellee did not file a motion to abate the trial court proceedings and provide appellant with an
opportunity to cure its defective name, appellee waived this defect and, therefore, did not carry its burden
entitling it to a judgment as a matter of law on the basis of standing. Id. at 600 (citing Mercure Co. v. N.V.
Rowland, 715 S.W.2d 677, 680 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.)). We find this case to
be instructive considering STS has made a similar standing argument against SIFCO even though SIFCO did
file an assumed name certificate with the Fort Bend County Clerk and the Texas Secretary of State.


 In a similar case, Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46 (Tex. 2003), the Texas Supreme
Court addressed a situation involving a failure to file an assumed name certificate. In Sibley, Sixth RMA
Partners initiated a lawsuit under the name "RMA Partners, L.P." Id. at 49. The record clearly established
that Sixth RMA Partners had never complied with the Assumed Business or Professional Name Act by filing
an assumed name certificate. Id. at 55. The defendant, who lost the suit, argued on appeal that Sixth RMA
Partners could not be awarded a judgment against him because it was never properly a party to the suit; only
"RMA Partners, L.P." could be considered a plaintiff. The court disagreed, finding that Sixth RMA used "RMA
Partners" as an assumed name, and accordingly, "the original petition filed . . . under the name RMA Partners,
L.P. was effective to commence suit against [defendant] on behalf of Sixth RMA." Id. at 53. Contrary to the
actions of Sixth RMA Partners, SIFCO, in the instant case, did actually file an assumed name certificate with
the proper authorities. In addition, STS has never explicitly challenged the fact that SIFCO failed to file an
assumed name certificate prior to commencing suit in any pleading or motion in the trial court. 
25. The record reflects that SIFCO initiated suit against STS on October 7, 2004, and did not file its
assumed name certificate with the proper authorities until April 26, 2005. However, STS never brought this
deficiency to the attention of the trial court via a motion to abate the proceedings.
26. We note that STS can raise a standing argument for the first time on appeal against SIFCO. See
Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445 (Tex. 1993). However, we have construed
STS's pleadings to be an attack on SIFCO's capacity to bring suit. Additionally, the Fourteenth Court of
Appeals, in Lighthouse Church, construed a similar standing argument raised by the appellee to most
appropriately be handled as a challenge to appellant's capacity within the context of chapter 36 of the business
and commerce code. See Lighthouse Church, 889 S.W.2d at 600; see also Tex. Bus. & Com. Code Ann. §
36.10, § 36.25 (Vernon 2002). 
27. The supreme court in Sibley, in concluding "that some evidence supports the implied finding of fact
that Sixth RMA used the name RMA Partners, L.P. as an assumed name" despite the fact that Sixth RMA
Partners did not file an assumed name certificate, examined the normal course of business of Sixth RMA
Partners. A liquidating agent and the general counsel for Sixth RMA Partners both testified that "'RMA
Partners, L.P.' was used as a trade name for the various RMA partnerships," "RMA Partners, L.P." letterhead
that was used for all of the partnerships, demand notices and referrals made on such letterhead, and
payments on notes owned by Sixth RMA Partners were made to "RMA Partners, L.P." Sibley, 111 S.W.3d
at 52-53.
28. STS does contend that:


 [i]f Seth a/k/a SIFCO, L.L.C. a/k/a Shiva Investment First, L.L.C. d/b/a SIFCO, L.L.C. d/b/a
Shiva Investment First, L.L.C. and d/b/a Shiva Investment First is correct in his position, it is
doubtful that there will be a future need of limited liability companies. No need to file
certificates, no need to file tax returns--pick a name, file a suit, get a judgment and file a
d/b/a. Call it the "Spartacus method": I'm Spartacus; I'm Spartacus; I'm Spartacus. No
worries mate, judgment for plaintiff--I'm Spartacus! 


Despite this contention, STS's brief is devoid of relevant authority concerning this sub-issue.