LULOC OIL COMPANY, Appellant,

v.

CALDWELL COUNTY, Texas, et al., Appellees.

No. 8472.

Court of Civil Appeals of Texas, Beaumont.

June 19, 1980.

Dennis Reese, Austin, for appellant.

Larry Calame, Kent M. Rider, Austin, for appellees.

KEITH, Justice.

This is an appeal from a judgment which denied the plaintiff partnership any relief in its action seeking to set aside ad valorem tax assessments upon its mineral interests. Plaintiff sued Caldwell County ("County") and Lockhart Independent School District ("District"), and the respective officers thereof charged with the duty of assessing and collecting ad valorem taxes for such governmental units. It also sought to enjoin the levy of such assessments upon its properties for the year 1978. The trial court, early in the proceedings, denied plaintiff's application for a temporary restraining order and a temporary injunction which would have prevented the completion of the tax assessment rolls, and upon the final hearing in a bench trial, denied all relief sought. The appeal is brought upon a myriad of points, not all of which will be considered. We reverse and render for the reasons to be stated.

Plaintiff sought the relief upon the theory that the respective taxing officials of the governmental units "arbitrarily failed to equally and uniformly value the real property in the County and District based upon its actual fair market value, in that all mineral and royalty interests were consistently valued at fair market value whereas non-mineral rural property or acreage was

consistently valued at a small fraction of fair market value, resulting in Appellant [plaintiff] paying more than its fair share of the tax burdens of the County and School District."

■ The trial court filed findings of fact and conclusions of law most of which are attacked by the plaintiff upon appeal. In considering this appeal, we will follow the usual rules relating to findings and conclusions. Ordinarily, when findings of fact and conclusions of law are supported by competent evidence, they are binding upon an appellate court. See *Gandy v. Culpepper*, 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ), and authorities therein cited. However, the rule laid down in *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156, 158 (1950), is still alive and well. There, the Court held:

"There is nothing in the rules which provides that in a case tried before the court without a jury the findings of fact are conclusive on appeal when a statement of facts appears in the record."

See also, *Douthit v. McLeroy*, 539 S.W.2d 351, 352 (Tex.1976); and *Block v. Waters*, 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ).

It is undisputed in our record that County and District both hired Thomas Y. Pickett Company ("Pickett"), a professional property appraisal company, to value the minerals, utilities, banks, and railroads within their respective boundaries. In 1978, each entity used Pickett's evaluations *without change*, and Pickett applied the ratio of assessment to one hundred percent of the actual values used by the taxing units: County ratio of 41% and District ratio of 85% of Pickett's findings. The trial court, based upon evidence in the record, found that "[t]he mineral values used by [County and District] for taxation for the year 1978 are substantially market value."

■ Thus, we are of the opinion that plaintiff discharged one of the primary burdens which it assumed when it instituted the litigation, a showing of the value of its own properties. In *City of Port Arthur v. Mosely*, 586 S.W.2d 915, 919 (Tex.Civ.App.—

Beaumont 1979, no writ), we collated many of the cases supporting this holding:

"The authorities are unanimous in holding that a taxpayer may not prevail in an action such as this in the absence of proof of the market value of his own property *and* a showing of discrimination resulting in substantial injury as compared to other taxpayers in the unit." (emphasis in original)

The second hurdle mentioned in *Mosely*, supra—discrimination showing substantial injury—requires a more elaborate statement of the underlying facts.

Mrs. Mattie Roebuck, the tax assessor-collector of County, testified that the County had adopted a system of classification for the valuation of rural acreage in the county, saying:

"We have five classes from $100 to $200, and the second class is $125. The third is $150, and the fourth is $175. The fifth is $200. . . . [Class] one would be the unimproved and [Class] five would be the better [property]. . . .."

Mrs. Roebuck also testified that "the figures of $100, $125, on up to $200, is . . . 100% actual value figure" so that "the very best, choicest acreage in the county, under that schedule, would be valued at 41% of $200 per acre." Under this schedule, "a good 10 acre tract of land is valued at the same per acre under the schedule as a good 100 acre tract . . . .."

The tax assessor-collector answered "yes" to this question:

"[G]enerally speaking, on a county-wide basis that as of January 1, 1978, these $100 to $200 values that were being used as 100% per acre value on acreage, were substantially less than the actual value basis was in Caldwell County as of January 1, '78?"

It was also shown that of a total tax roll of some sixty-nine million dollars, rural acreage based upon the classification noted above accounted for nearly twenty-five million dollars, more than a third of the total tax roll. The rural acreage upon the roll was shown to aggregate 358,471.19 acres.

County Judge Scott[1] testified that the best rural acreage in the county had a market value of "around a thousand dollars" an acre and that it would have been "very easy" for him to have sold his 55-acre farm for "a thousand dollars or more an acre." Judge Scott's land was upon the tax rolls of his county at 41% of $200 per acre, improvements not being considered. He admitted that the Commissioners Court had been concerned by the discrepancy between the valuation of minerals and the valuation used on rural acreage. This discrepancy was explained in this manner:

"Q. And your concern has been that minerals are on the rolls at 41% of their actual value, whereas acreage is on the rolls at 41% or something less. Isn't that a fair summary?

"A. Yes."

The District's plan of valuation of rural acreage was even more novel than that used by County. We summarize the testimony of Joe Rector, District assessor-collector of taxes since 1967. He testified that the valuation was fixed at "[f]rom $50 to $500 an acre," and he elaborated on the breakdown:

"From 1 to 25 acres, we have a factor on it. The first acre is $500, the second acre is $400, I believe. The third acre is $350. It is on a graduated scale.

[and the twenty-fifth acre is—]

"Is $200, I believe.

     *    *    *    *    *    *

[the range on the subsequent acreage is—]

"Fifty to $150."

1. As county judge, he was a member of the Board of Equalization of the county on the year in question. *Tex.Rev.Civ.Stat.Ann. art. 7206 (1960).*

2. "The effect of this schedule was that any 25 acre tract would have a total 100% value of $6,000 or $240 per acre, with the average per-acre value becoming less on any tract over 25 acres. (Note—a simple mathematical calculation shows that any 50 acre or larger tract valued according to this schedule, and using *the maximum* $150 per acre for all acres over 25, would be given a 100% value of less than $200 per acre.)"

The witness testified that "[t]here might be a few exceptions [to the schedule], but normally it is district-wide." We have examined the record and agree with the summary of the "schedule" extracted from plaintiff's brief.[2]

█ Plaintiff offered an expert witness, Curtis Bremer, who gave testimony concerning sales of rural acreage in the county and district. Without going into detail as to Bremer's testimony, because in our view of the record an arbitrary plan had already been established by the assessors' testimony, we reproduce *plaintiff's* summary of such testimony as found in its brief.[3]

Although defendants have filed a sophisticated and erudite brief of nearly fifty pages with seven reply points of error, they have made no effort to disprove, explain, or defend the assessment schemes and devices used by the two assessors as outlined earlier. Instead, defendants' counsel rely upon procedural points of doubtful validity to be discussed hereinafter.

It is sufficient to state, at this time, that we are of the opinion, from a careful study of the record, that the trial court erred in its second conclusion that "Plaintiff has failed to prove that it will suffer substantial injury from application of the 1978 tax plans of the respective Defendants."

█ We are also of the opinion that the court erred in its fourth conclusion of law that there was no evidence that the mineral and non-mineral assessments were not equal and uniform. Consequently, we sustain plaintiff's fourth and sixth points of error; and, if we were to reach points five

3. "Bremer's calculations reflect that the average per acre selling price of the fifteen sales (with adjustment to bring 1976 sales to 1978 values) was $961 per acre. Comparing the County and School District 100% figures with the actual sales information on each sale over the three year period, the County was using 100% figures that were 6.8% to 46.3% of the actual sales prices, and the School District's percentages ranged from 8.3% to 36%. A simple calculation from [plaintiff's exhibit 14] shows that average percentage for the County was 22.8% and for the District was 18.8%."

and seven, we would likewise sustain such points.[4]

We have followed the rule of law enunciated in *Swanson v. Swanson*, supra (228 S.W.2d at 158), in our review of the evidence in relation to the findings of fact and conclusions of law and our complete record of the proceedings. We have evaluated the record under the rationale of *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), governing our review of jury findings.

Thus, in our opinion and we now so hold, the plaintiff is entitled to a reversal of the judgment of the trial court unless one or more of the procedural reply points has merit. We now turn to a consideration of such reply points.

■ We readily accept as binding defendants' major premise that a direct attack upon an illegal tax assessment may be made by a taxpayer only if he timely avails himself of the remedies to prevent the taxing authority from putting the plan into effect. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416 (1954). Once the tax plan has been placed in effect, plaintiffs have lost their right to the remedies of injunction and mandamus. *Dorman v. Ferris Independent School District*, 581 S.W.2d 783, 785 (Tex.Civ.App.—Waco 1979, writ ref'd n. r. e.), and authorities therein cited. See also, *21 Texas Practice, Property Taxes § 163, at 187, et seq. (Howell, 1975)*.

The following chronological table will serve to place the several events in proper sequence:

### District

| Board of Equalization Meetings | – June 22, July 11, July 12 |
|---|---|
| Suit filed | – August 8 |
| Temporary restraining order denied | – August 31 |
| Some tax statements mailed | – September 19 [5] |

### County

| Board of Equalization Meeting | – Met: July 12, one day; Finally adjourned August 14 |
|---|---|
| Suit filed | – August 8 |
| Tax rate adopted | – August 14 |
| Temporary restraining order denied | – August 31 |
| Tax rolls approved [6] | – September 11 |
| Some tax statements mailed | – September 18 (See fn. 5, supra) |

It is readily apparent that plaintiff at least exercised its right in trying to prevent the imposition of the illegal levy of taxes upon its properties before the taxing plan had been put into effect by either entity. Defendants now seek to deny the plaintiff the right to make a direct attack upon the illegal levy by two procedural devices: (1) plaintiff did not have on file, at the time it filed its suit, an assumed name certificate;

---

4. *Point Four*: "The trial court erred in rendering a take nothing judgment against Appellant, based on its conclusion or finding that Appellant failed to prove that it would suffer substantial injury as a result of Appellees' tax plans, for the reason that the evidence conclusively established such substantial injury."

  *Point Six*: "The trial court erred in rendering a take nothing judgment against Appellant, based on its finding or conclusion that there was no evidence that Appellees' mineral and non-mineral values were unequal or not uniform, for the reason that the evidence conclusively established that they were unequal and not uniform."

  *Points Five and Seven* present challenges to the findings and conclusions attacked in points four and six, this time upon the ground that such are "contrary to the great weight and preponderance of the evidence."

5. Since Pickett's portion of the roll was not received until the middle of September, the statements mailed earlier must have been to the owners of non-mineral properties.

6. The fact that Pickett's mineral roll was not received until the middle of September, and the further fact that the tax rolls were not actually signed by the assessor-collector or the members of the Commissioners Court until February, 1979, are not deemed material to our decision.

and (2) it did not, at the time suit was filed, tender into court the taxes which it conceded were due and would be payable upon its property for the year in question. We will discuss the contentions in the order mentioned.

At the time plaintiff instituted its suit for injunctive relief, etc., it had not complied with the provisions of the Assumed Business or Professional Name Act, *Tex. Bus. & Comm.Code Ann. § 36.10(a)(2)(B) (Supp.1980)*, requiring a partnership regularly conducting business under an assumed name to file a certificate in the office of the county clerk where it does business.

On November 29, 1978, defendants for the first time complained of such failure to file the assumed name certificate, its complaint being included in its first amended original answer in the form of the plea in abatement. It sought a dismissal of the action, not its abatement. A similar plea was contained in the second amended original answer filed on January 8, 1979, and in the third amended original answer filed on February 5, 1979. However, by an order signed on February 9, 1979, all dilatory pleas, including the plea in abatement, were overruled.

The trial of this cause began on May 21, 1979, and our record discloses that plaintiff had complied with the assumed name statute by filing the required certificate months before the trial began, and even prior to the order of the court overruling the plea in abatement. As we understand defendants' contentions, it is now argued that since the certificates were not on file at the time suit was filed, such suit was in effect a nullity; thus, plaintiff made no valid attack upon the assessments and levy of taxes until after the plans had been put into effect. We disagree.

In *Continental Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex.Civ.App. —Houston [1st Dist.] 1979, no writ), Justice Evans made a careful and comprehensive study of the law relating to the rights of a plaintiff doing business under an assumed name who had not complied with the filing requirement. There, the Court concluded that the right of a plaintiff to maintain the suit may be raised properly only by a plea in abatement which must be urged before the trial begins or it is waived. When a proper plea is filed, it simply suspends further action in the cause until the cause of abatement has been removed; it does not authorize the dismissal of the cause. In legal effect, defendants waived compliance with the filing requirement by not filing earlier the plea in abatement raising such question.

The first sentence of the penalty provision of the Act, *§ 36.25*, is in harmony with the holdings of the Court in *Thorup*, supra.[7] We find no merit in the contentions advanced by the defendants.[8]

Defendants also argue that the plaintiff did not timely file its attack upon the assessments because it did not tender the taxes which would have been due upon its properties if lawfully assessed until after the unlawful plans had been placed in effect.

Primary reliance is placed upon *Zglinski v. Hackett*, 552 S.W.2d 933, 936 (Tex.Civ. App.—Austin 1977, writ ref'd n. r. e.). The *primary* holding in *Zglinski* was that the plan of taxation had already been put into effect before plaintiffs instituted their suit.

Relying upon *City of Arlington v. Cannon*, supra (271 S.W.2d at 416), the Austin Court held, just as we have held, that a suit

---

7. *§ 36.25*: "Failure to comply with the provisions of this chapter by any person shall not impair the validity of any contract or act by such person nor prevent such person from defending any action or proceeding in any court of this state, but such person shall not maintain an action or proceeding in any court of this state arising out of a contract or act in which an assumed name was used until an original, new, or renewed assumed business or professional name certificate has been filed as required by this chapter."

8. Under our view of the record, we are of the opinion that the trial court's Finding of Fact No. 12, that plaintiff had not filed an assumed name certificate before November 17, 1978, is immaterial.

filed after the plan has been put into effect comes too late for the trial court to grant the relief by injunction and mandamus. The Austin Court reversed the judgment granting the injunctive relief and dismissed the cause. In so doing, it was correct under the rationale of *Cannon,* supra.

In urging its present contention, defendants do not rely upon the foregoing dispositive holding in *Zglinski,* but upon the second prong of the case relating to tender (552 S.W.2d at 936).

■ Admittedly, the cases requiring a complaining taxpayer to offer to do equity before being entitled to receive equitable relief is applicable in suits such as that now before the court. This includes a tender "in dollars and cents the amount of taxes owed under such tax payer's theory of valuation." *Harding Bros. Oil & Gas Co. v. Jim Ned Independent School District,* 457 S.W.2d 102, 104–105 (Tex.Civ.App.—Eastland 1970, no writ), and authorities therein cited.

In the cited case, the defendants levied a special exception to the pleadings because of the failure of the taxpayer to tender any sum in payment of taxes due. Upon plaintiff's refusal to amend, the suit was dismissed. (457 S.W.2d at 104)

■ In this instance, defendants included in their third amended answer special exceptions to the plea of tender by plaintiff. This pleading was filed on February 5, 1979. The thrust of the exception was that plaintiff's plea of tender "fails to give the Defendants fair notice of the amount being tendered by the Plaintiffs on any specific parcel of property owned by the Plaintiffs and fails to show how the Plaintiffs have concluded that these amounts are their 'fair share of the taxes' which they owe to the Defendants for the year 1978 . . . ." The relief sought was that the allegations be stricken or plaintiff required to replead.

After reviewing carefully the special exception, we are led to the conclusion that it did not comply with the provisions of *Tex.*

*R.Civ.P. 91.* The exception was a broadside attack and did not "point out intelligibly and with particularity" the defect therein. Moreover, plaintiff was not required to plead its evidence and if defendants desired more specific factual detail, resort should have been to the discovery process. See *McCamey v. Kinnear,* 484 S.W.2d 150, 153–154 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.).

■ Defendants argue that since plaintiff did not make the tender until after the plan had been put into effect, its suit came too late to be a direct attack upon the taxing scheme. We disagree. In *Del Valle Independent School District v. Hackett,* 563 S.W.2d 338, 342 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.),[9] the tender was not made until November 17, presumably long after suit had been filed and at a time when the assessment plan had been put into effect. At the trial of the merits, when objection was made to testimony, the trial court permitted the filing of a trial amendment to allege such tender. We find no merit to the present contentions of defendants.

Having considered the authorities cited by the parties, our review of the record leads us to the conclusion that the trial court erred in denying plaintiff the relief sought. Consequently, we now reverse the judgment of the trial court and now render judgment setting aside, vacating, and holding for naught the assessments by each defendant upon plaintiff's properties for the year involved.

The judgment is without prejudice to the right of each defendant to again assess and value plaintiff's properties in accordance with law and to collect such taxes as may lawfully be due thereon. *Atlantic Richfield Co. v. Warren Independent School District,* 453 S.W.2d 190, 200 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.), and authorities therein cited.

Reversed and Rendered.

9. This *Hackett* case was an appeal from a final judgment after a trial on the merits and was the same case reported as *Zglinski v. Hackett,* supra, an appeal from an order granting a temporary injunction in favor of *Hackett.*