**Affirmed and Opinion Filed March 28, 2023.**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-21-00725-CV**

**AL BENSER D/B/A APEX FINANCIAL CORPORATION, Appellant**
**V.**
**DALLAS COUNTY, CITY OF DALLAS, DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, DALLAS COUNTY SCHOOL EQUALIZATION FUND, DALLAS INDEPENDENT SCHOOL DISTRICT, AND PARKLAND HOSPITAL DISTRICT, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. TX-18-01518**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

This appeal stems from a suit to collect delinquent property taxes on property located in Dallas County. Appellant Al Benser d/b/a Apex Financial Corporation (Apex) appeals the June 9, 2021 judgment in favor of appellees Dallas County, City of Dallas, Dallas County Community College District, Dallas County School Equalization Fund, Dallas Independent School District, and Parkland Hospital District (the Taxing Authorities). In three issues, Apex complains the trial court erred by (1) awarding the Taxing Authorities penalties and interest on an award included

in a 2017 default judgment, (2) awarding damages on maintenance liens purportedly barred by limitations, and (3) denying Apex's counterclaim for damages from the 2011 demolition of a structure on the Property. Finding no error, we overrule each of these issues and affirm the trial court's judgment.

## BACKGROUND

Apex owned real property located at 2827 Seaton Drive in Dallas County (the Property). During Apex's ownership, property taxes became delinquent, a vacant structure on the Property fell into disrepair, and the Property became unkept in violation of City of Dallas ordinances. As a result, liens were assessed on the Property and the vacant structure was demolished. On appeal, Apex raises issues concerning the demolition proceedings and two proceedings to collect delinquent property taxes and foreclose on municipal health and safety liens[1] assessed on the Property.

## I.    The Demolition

In February 2011, the City of Dallas (the City) filed a petition and notice of public hearing seeking orders requiring the property owner to repair, remove, or demolish a vacant structure on the Property. The City alleged the structure should be demolished because it violated "numerous minimum housing standards in

---

[1] These liens were assessed pursuant to Chapter 342 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE §§ 342.002, 342.006, 342.007. The liens at issue here include liens labeled as weed liens, a paving assessment, a secured closure lien, and a demolition lien, which we refer to collectively as "maintenance liens."

Chapter 27 of the Dallas City Code" and was "dilapidated, substandard, unfit for human habitation, a hazard to the public health, safety and welfare, and constitutes an urban nuisance." In its petition, the City listed "Apex Financial Group" as the owner of the Property with an address of PO Box 165598, Irving, Texas 75016. After a public hearing, the municipal court ordered the owner to demolish the structure within thirty days. When the owner failed to demolish the structure, the City sought and obtained an order permitting it to demolish the structure on the Property. Apex contends the demolition occurred without its knowledge.

## II.    The 2016 Proceeding

According to tax records, Apex owed delinquent property taxes on the Property for tax years 1997, 1998, and 2000 through 2019. The Taxing Authorities first sued to collect delinquent taxes on the Property in 2016. In the 2016 Proceeding, the Taxing Authorities sued "Apex Financial Corp." to recover delinquent property taxes owed for tax years 1997, 1998, and 2000 through 2015, and to foreclose on maintenance liens from work completed on the Property in 2005 and between 2012 and 2016. The maintenance liens reflected costs incurred by the City mowing the Property and fees and expenses related to the 2011 demolition. The Taxing Authorities obtained a default judgment against "Apex Financial Corp." on February 9, 2017. Based on the Taxing Authorities' certificate of last known address, the district clerk mailed notice of the default judgment to the following:

Apex Financial Corp.
President Roy Williams

30 Hilton Haven Rd.
Key West, Florida 33040

The Florida address was not Apex's address, and Mr. Williams was not affiliated with the Property. Considering this error, the Taxing Authorities obtained an "Order for Nonsuit" of the 2016 Proceeding on May 5, 2020.

## III.    The Underlying Proceeding

Meanwhile, property taxes continued accruing, and the City filed additional maintenance liens. On September 25, 2018, the Taxing Authorities initiated the underlying suit to collect the delinquent taxes, interest, attorney's fees, and costs pursuant to section 33.41 of the Texas Tax Code. TEX. TAX CODE § 33.41 (suit to collect delinquent tax). The Taxing Authorities also sought to foreclose on maintenance liens from work completed on the Property in 1988, 1994, 2005, and between 2012 and 2020, and fees and expenses related to the 2011 demolition. Apex filed a counterclaim to recover the value of the demolished structure as damages for the City's 2011 demolition. Apex also argued any accrued interest and penalties after 2016 should be removed from any judgment in favor of the Taxing Authorities because the 2016 Proceeding was wrongfully filed without notice to Apex.

The underlying case was tried to the bench on June 7, 2021. The trial court awarded the Taxing Authorities $31,805.99 in delinquent property taxes, penalties, interest, and fees owed for tax years 1998 and 2000 to 2019. The judgment also ordered recovery on twelve of the maintenance liens. Apex filed a motion for new trial, which the trial court denied by written order. This appeal followed.

–4–

**ANALYSIS**

In three issues, Apex contends the trial court erred by (1) awarding the Taxing Authorities penalties and interest on amounts awarded in the 2017 default judgment, (2) awarding damages on maintenance liens purportedly barred by limitations, and (3) denying Apex's counterclaim for damages from the 2011 demolition. Finding no error, we overrule Apex's appellate issues and affirm the trial court's judgment.

## I.      Penalties and interest after the 2016 Proceeding

In its first issue, Apex contends the trial court erred by denying Apex's request that no penalties or interest be charged to Apex after 2016. Apex maintains the Taxing Authorities failed to give Apex notice of the 2016 Proceeding and 2017 default judgment. According to Apex, if Apex had known of the default judgment, "it would likely have made arrangements to pay such judgment near that time" and, therefore, penalties and interest would not have accrued on the amounts awarded in the default judgment. At oral argument, Apex's counsel conceded that Apex seeks vacatur of the penalties and interest under principles of equity and in the interest of justice and fairness. We conclude Apex is not entitled to the relief it requests.

The trial court's decision to grant or to deny a request for equitable relief is reviewed for an abuse of discretion. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008); *Tex. Youth Comm'n v. Koustoubardis*, 378 S.W.3d 497, 502 (Tex. App.—Dallas 2012, no pet.); *Mathews v. First Citizens Bank*, 374 S.W.2d 794, 797 (Tex. App.—Dallas 1963, writ ref'd n.r.e.). When a party seeks equitable

–5–

relief, it must offer and prove its willingness to do equity. *Zonker v. Sullivan*, 650 S.W.2d 189, 190 (Tex. App.—El Paso 1983, writ ref'd n.r.e.) ("to be entitled to equitable relief, one must offer and prove his willingness to do equity.") (internal citations omitted); *Harding Bros. Oil & Gas Co. v. Jim Ned Indep. Sch. Dist.*, 457 S.W.2d 102, 104–05 (Tex. App.—Eastland 1970, no writ) (rejecting taxpayers' request for judgment enjoining school district from enforcing increased tax assessments where taxpayers did not tender any taxes to school district); *Luloc Oil Co. v. Caldwell Cnty.*, 601 S.W.2d 789, 795 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.) (offering to do equity includes tendering "in dollars and cents the amount of taxes owed under such tax payer's theory of valuation.") (quoting *Harding Bros. Oil & Gas*, 457 S.W.2d at 104–105). Apex failed to do equity here. There is no evidence that Apex tendered payment for any delinquent taxes owed, much less the taxes owed and awarded in the 2017 default judgment for which it sought credits for penalties and interest. The trial court did not abuse its discretion by denying Apex equitable relief.

Moreover, the Taxing Authorities were statutorily authorized to vacate the 2017 default judgment and file the underlying lawsuit to recover the delinquent taxes, penalties, and interest. *See* TEX. TAX CODE § 33.56(a)(2) (providing for vacation of judgment for failure to join person needed for just adjudication); *see also Floyd v. Wharton Cnty.*, No. 13-15-00480-CV, 2017 WL 2180697, at *4 (Tex. App.—Corpus Christi–Edinburg May 18, 2017, no pet.) (mem. op.) (motion to

vacate judgment satisfied requirements of section 33.56). Under Section 33.56, when the trial court vacates the judgment, the delinquent tax suit is revived and the taxes, penalties, interest, and attorney's fees and costs, and the liens securing them, are reinstated. TEX. TAX CODE § 33.56(f)(3), (4). Section 33.56 places no time limits on seeking an order vacating the judgment. *Barua v. Cnty. of Dallas*, 100 S.W.3d 629, 635 (Tex. App.—Texarkana 2003, pet. denied) (stating section 33.56 places no time limits on seeking an order vacating a tax judgment). Apex failed to provide the trial court or this Court any authority to support its contention that the 2016 Proceeding and subsequent nonsuit entitled Apex to a credit of penalties and interest, and we have found none. We overrule Apex's first issue.

## II. Foreclosure of Maintenance Liens

Next, Apex argues any maintenance liens "that fall outside the applicable statute of limitations" should be removed from the judgment. The question of how a statute of limitations applies is a matter of law, which we review de novo. *Delhomme v. Comm'n for Law. Discipline*, 113 S.W.3d 616, 619 (Tex. App.—Dallas 2003, no pet.). To prevail on a limitations defense, a defendant must conclusively establish the elements of the defense, including when the plaintiff's claim accrued. *Microlaser Therapy Corp. v. White*, No. 05-17-00761-CV, 2018 WL 6845242, at *2 (Tex. App.—Dallas Nov. 16, 2018, pet. denied) (mem. op.) (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005)). When a claim accrues is also a question of law that we review de novo. *See Willis v. Maverick*, 760 S.W.2d

–7–

642, 644 (Tex. 1988); *see also Sowell v. Int'l Ints., LP*, 416 S.W.3d 593, 598 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Chapter 342 of the Texas Health and Safety Code permitted the City to provide services to maintain the Property, including mowing the Property to rid it of weeds, when Apex failed to comply with municipal ordinances. *See* TEX. HEALTH & SAFETY CODE § 342.004 ("The governing body of a municipality may require the owner of real property in the municipality to keep the property free from weeds, brush, and a condition constituting a public nuisance as defined by Section 343.011(c)(1), (2), or (3)."); TEX. HEALTH & SAFETY CODE § 342.006(a) (if the owner of the property does not comply with a municipal ordinance or requirement under Chapter 342, the municipality may "(1) do the work or make the improvements required; and (2) pay for the work done or improvements made and charge the expenses to the owner of the property."). The City was also permitted to "assess expenses incurred under Section 342.006 against the real estate on which the work is done or improvements made," and foreclose a lien on property "in a proceeding relating to the property brought under Subchapter E, Chapter 33, Tax Code." TEX. HEALTH & SAFETY CODE § 342.007(a),(h).

Chapter 342 provides no specific limitations period for foreclosure actions on maintenance liens. In the trial court, Apex contended the residual four-year statute of limitations applied to collection of the maintenance liens. TEX. CIV. PRAC. & REM. CODE § 16.051 ("Every action for which there is no express limitations period,

except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."). On appeal, Apex urges the Court to apply either the residual limitations period or, alternatively, apply the limitations period for the collection of taxes under section 33.05 of the tax code. *See* TEX. TAX CODE § 33.05(a). The Taxing Authorities, in contrast, maintain the City is exempt from a limitations defense as to the foreclosure on the maintenance liens. *See* TEX. CIV. PRAC. & REM. CODE § 16.061(a) (an incorporated city's right of action is not barred by certain statutory limitations period, including four-year limitations period to foreclose on a real property lien under section 16.035); *see also* TEX. CIV. PRAC. & REM. CODE § 16.035(a) (a lienholder must foreclose on a real property lien not later than four years after the day the cause of action accrues). We agree with the Taxing Authorities.

As a preliminary matter, we conclude section 33.05 of the tax code is inapplicable. Section 33.05 is found in Subchapter A of Chapter 33 of the tax code and provides a "Limitation on Collection of Taxes":

> Personal property may not be seized and a suit may not be filed:(1) to collect a tax on personal property that has been delinquent more than four years; or (2) to collect a tax on real property that has been delinquent more than 20 years.

TEX. TAX CODE § 33.05(a). The maintenance liens at issue, however, are not taxes sought to be collected. Rather, municipal demolition liens and municipal weed and sanitary liens are "specialized involuntary statutory liens [that] may affect Texas real property." *Standards for liens and lis pendens*, 3A TEX. PRAC., LAND TITLES AND

TITLE EXAMINATION § 11.16 (3d ed.) (quoting TEX. PROP. CODE Title 2 Appendix, Texas Title Examination Standards, Chapter 15, Standard 15.50). Further, the foreclosure of such liens is governed by Subchapter E of Chapter 33, not Subchapter A of that chapter. TEX. HEALTH & SAFETY CODE § 342.007(h) (a municipality's governing body "may foreclose a lien on property under this subchapter in a proceeding relating to the property brought under Subchapter E, Chapter 33, Tax Code."). Subchapter E consists of section 33.91 through section 33.95 and addresses the seizure of real property. TEX. TAX CODE § 33.91 *et seq.* The limitations periods of section 33.05, thus, do not apply here.

We also conclude the residual statute of limitations does not apply here. Under Subchapter E, a municipality may seize a person's real property "for the payment of delinquent ad valorem taxes, penalties, and interest the person owes on the property and the amount secured by a municipal health or safety lien on the property." TEX. TAX CODE § 33.91(a). Section 33.91 applies "to a city or county seizure of real property by tax warrant, which is an administrative process." *Target Corp. v. D&H Props., LLC*, 637 S.W.3d 816, 838 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (citing TEX. TAX CODE §§ 33.91-.95 ("Subchapter E. Seizure of Real Property"); *Stoker v. City of Fort Worth*, No. 02-08-00103-CV, 2009 WL 2138951, at *3 (Tex. App.—Fort Worth July 16, 2009, no pet.) (Section 33.91 "applies to a municipality's seizure of real property . . . ."). "A lienholder must foreclose on a real property lien not later than four years after the day the cause of action accrues." TEX.

CIV. PRAC. & REM. CODE § 16.035(a). However, political subdivisions of the state, such as the City, are not barred by the statute of limitations found in certain provisions of the code, including section 16.035. TEX. CIV. PRAC. & REM. CODE § 16.061(a); *State ex rel. Tex. Dep't of Transp. v. Esquivel*, 92 S.W.3d 17, 23 (Tex. App.—El Paso 2002, no pet.) ("By Section 16.061, and its predecessors, the legislature has exempted counties and other entities, unlike ordinary litigants, from the limitations defense in appropriate cases."). Accordingly, we conclude the City's foreclosure action on the maintenance liens was not subject to or barred by the four-year statute of limitations. We overrule Apex's second issue.

## III.    Apex's Counterclaim

In its final issue, Apex contends the trial court erred by denying Apex's counterclaim for damages from the 2011 demolition. This issue presents a question of law that we review de novo. *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016) ("The proper construction of a statute presents a question of law that we review de novo."); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (questions of law reviewed de novo); *Moore v. Wood*, 809 S.W.2d 621, 623 (Tex. App.—Houston [1st Dist.] 1991, no writ) (how to apply the rules of civil procedure to undisputed facts is a question of law reviewed de novo).

Section 214.001 of the local government code sets out the parameters under which a municipality may order that a substandard building be vacated, secured, repaired, removed, or demolished. TEX. LOC. GOV'T CODE § 214.001. For example,

section 214.001(a) provides prerequisites a building must meet to be subject to the statute, and section 214.001(b) sets out requirements that an ordinance must meet to be subject to the statute. TEX. LOC. GOV'T CODE § 214.001(a)(1)–(3)[2]; 214.001(b)(1)–(3)[3]. The statute also provides notice and hearing requirements for proceedings brought under the statute. TEX. LOC. GOV'T CODE § 214.001(c)–(r).

Apex's counterclaim is based solely on its allegation that it did not receive notice of the demolition. The evidence at trial, however, showed that the notice of public hearing, the March 10, 2011 demolition order, the subsequent Notice of Noncompliance, and the May 18, 2021 order authorizing the City to demolish the Property were mailed via certified mail, return receipt requested to the address provided by Apex to the Texas Secretary of State. The notices were also posted on the Property and published in a newspaper of general circulation in the municipality in which the building was located. The notices complied with the notice requirements of section 214.001 of the local government code. TEX. LOC. GOV'T

---

[2] "A municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is: (1) dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare; (2) regardless of its structural condition, unoccupied by its owners, lessees, or other invitees and is unsecured from unauthorized entry to the extent that it could be entered or used by vagrants or other uninvited persons as a place of harborage or could be entered or used by children; or (3) boarded up, fenced, or otherwise secured in any manner if: (A) the building constitutes a danger to the public even though secured from entry; or (B) the means used to secure the building are inadequate to prevent unauthorized entry or use of the building in the manner described by Subdivision (2)." TEX. LOC. GOV'T CODE § 214.001(a)(1)–(3).

[3] "The ordinance must: (1) establish minimum standards for the continued use and occupancy of all buildings regardless of the date of their construction; (2) provide for giving proper notice, subject to Subsection (b-1), to the owner of a building; and (3) provide for a public hearing to determine whether a building complies with the standards set out in the ordinance." TEX. LOC. GOV'T CODE § 214.001(b)(1)–(3).

CODE § 214.001(c)–(g), (n), (o), (q). By mailing the notices to Apex in accordance with section 214.001, "the notice is considered delivered" even if the postal service returns the notice as "refused" or "unclaimed." TEX. LOC. GOV'T CODE § 214.001(r). Under this record, we conclude Apex failed to prove that it did not receive the statutorily-required notice of the demolition proceedings or the demolition itself.

Moreover, Apex's appeal of the demolition lien came too late. A party aggrieved by a municipality's order under section 214.001 "may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality." TEX. LOC. GOV'T CODE § 214.0012(a). The petition must be filed "within 30 calendar days after the respective dates a copy of the final decision of the municipality is personally delivered to them, mailed to them by first class mail with certified return receipt requested, or delivered to them by the United States Postal Service using signature confirmation service,. . ." *Id.* If no petition is filed within that time, the decision becomes final on expiration of the "30 calendar day period." *Id.* The record shows all required notices were mailed to Apex in 2011 in accordance with the statute. Further, Apex's president, Al Benser, conceded at trial that he was aware the demolition occurred by 2013 or 2014 and did not appeal the demolition. Apex filed its counterclaim challenging the demolition in 2020, which is more than thirty days after either the date the notices were mailed to Apex or the date Apex contends it acquired actual knowledge of the demolition. Either way, the counterclaim was filed years after the decision became final. As a

–13–

result, Apex's challenge to the demolition was waived. We overrule Apex's third issue.

## CONCLUSION

Apex has failed to show its entitlement to the relief requested on appeal. Accordingly, we overrule Apex's appellate issues and affirm the trial court's judgment.

/Robbie Partida-Kipness/

ROBBIE PARTIDA-KIPNESS
JUSTICE

210725F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

AL BENSER D/B/A APEX
FINANCIAL CORPORATION,
Appellant

No. 05-21-00725-CV      V.

DALLAS COUNTY, CITY OF
DALLAS, DALLAS COUNTY
COMMUNITY COLLEGE
DISTRICT, DALLAS COUNTY
SCHOOL EQUALIZATION FUND,
DALLAS INDEPENDENT
SCHOOL DISTRICT, AND
PARKLAND HOSPITAL
DISTRICT, Appellees

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. TX-18-01518.
Opinion delivered by Justice Partida-
Kipness. Justices Molberg and
Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees DALLAS COUNTY, CITY OF DALLAS, DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, DALLAS COUNTY SCHOOL EQUALIZATION FUND, DALLAS INDEPENDENT SCHOOL DISTRICT, AND PARKLAND HOSPITAL DISTRICT recover their costs of this appeal from appellant AL BENSER D/B/A APEX FINANCIAL CORPORATION.

Judgment entered this 28th day of March 2023.